UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

GENERAL INSURANCE COMPANY OF
AMERICA,

                    Plaintiff,                    14-cv-07354 (JGK)

        - against -                               MEMORANDUM OPINION &
                                                  ORDER
STARR INDEMNITY AND LIABILITY
COMPANY ET AL.,

                    Defendants.
————————————————————————————

JOHN G. KOELTL, District Judge:

    Before the Court are cross-motions for summary judgment by
Northfield Insurance Company ("Northfield") and New York Marine
and General Insurance Company ("New York Marine").  For the
reasons discussed below, Northfield's motion for summary
judgment is **granted**, and New York Marine's motion for summary
judgment is **denied**.

                              I.

    This case arises out of an alleged workplace injury
sustained by Zbigniew Mroz ("Mroz"), an employee of DNK
Contracting Corp. ("DNK"), at a construction project located at
1663 East Burn Avenue, Bronx, New York ("the project").  The
construction project was owned by Omni New York, LLC, Omni New
York LLC and/or OLR ECW L.P. (collectively, "the OLR Entities").
The OLR Entities were insured by General Insurance Company of
America ("General").  The construction manager was Renewal
Construction Services ("Renewal"), and it was insured by Starr

1

Indemnity and Liability Company ("Starr").   The general contractor was KNS Building Restoration ("KNS"), and it was insured by New York Marine.   Mroz's employer, DNK, was insured by Northfield.

KNS subcontracted a portion of the roofing work to DNK.   On March 8, 2011, KNS issued a purchase order to DNK.   <u>See</u> Shelton Aff. Ex. A, ECF Docket No. 48-1 (the "purchase order").

The purchase order contains insurance procurement requirements.   <u>See</u> <u>id.</u> at ¶¶ 53-62, at 7-8.   Paragraph 54 requires DNK to provide KNS with a certificate of insurance reflecting the required insurance.   <u>Id.</u> at ¶ 54, at 7. Paragraph 56 states "[t]he Subcontractor shall list KNS Building Restoration Inc . . . and any and all additional insureds as described in the Contract Documents . . ., or under Subcontractor's liability policy."   <u>Id.</u> at ¶ 56, at 7.

The purchase order also requires DNK "to indemnify and hold harmless KNS, the Owner, the additional insureds . . . from all claims, demands, suits, costs, or expenses (including attorneys' fees) incurred on account of . . . bodily injury . . . arising out of your operations, services or materials under this Agreement that are sustained by any person(s) . . . including . . . employees . . . ." <u>Id.</u> at ¶ 59, at 7.

2

The purchase order includes a signed rider, the
"Subcontract Agreement Rider (Contractor/Subcontractor)," that
provides in relevant part:

> 2. Insurance. The Subcontractor shall procure and
> shall maintain until final acceptance of the Work,
> such insurance as will protect the Contractor, all
> entities the Contractor is required [to] indemnify and
> hold harmless, the Owner, and their officers . . . .
>
> 2.1 The Subcontractor's insurance shall include
> contractual liability coverage and additional insured
> coverage for the benefit of the Contractor, Owner and
> anyone else the Owner is required to name (as set
> forth in the schedule below), and shall specifically
> include coverage for completed operations. The
> insurance required to be carried by the Subcontractor,
> and any Sub-Sub-Contractors shall be PRIMARY AND NON-
> CONTRIBUTORY. With respect to each type of insurance
> specified hereunder, the Contractor's and Owner's
> insurances shall be excess to [the] Subcontractor's
> insurance.

Id. at 9-10.

Northfield issued a commercial general liability policy to
DNK for the period from August 14, 2010 to August 14, 2011
(Policy No. CP576949) with a $1 million per occurrence limit
("the Northfield policy"). See Taft Aff. Ex. A, ECF Docket No.
49-1, at 1, 4.

The Northfield policy contains a "Blanket Additional-
Insured (Contractors)," endorsement (S2774-CG (7/07)), that
provides in relevant part:

> 1. WHO IS AN INSURED - SECTION (II) is amended to
> include any person or organization that you agree in a
> "written contract requiring insurance" to include as
> an additional insured on this Coverage Part, but:

3

a.   Only  with  respect  to  liability  for  "bodily injury", "property damage" or "personal injury"; and

b.   If,  and  only  to  the  extent  that,  the  injury  or damage is caused by acts or omissions of you or your subcontractor  in  the  performance  of  "your  work"  to which  the  "written  contract  requiring  insurance" applies.  The  person  or  organization  does  not  qualify as  an  additional  insured  with  respect  to  the independent  acts  or  omissions  of  such  person  or organization.

* * *

5.   The  following  definition  is  added  to  the DEFINITIONS section:

"Written  contract  requiring  insurance"  means  that  part of  any  written  contract  or  agreement  under  which  you are  required  to  include  a  person  or  organization  as  an additional  insured  on  this  Coverage  Part,  provided that  the  "bodily  injury"  and  "property  damage"  occurs and  the  "personal  injury"  is  caused  by  an  offense committed:

a.   After  the  signing  and  execution  of  the  contract or agreement by you;

b.   While  that  part  of  the  contract  or  agreement  is in effect; and

c.   Before  the  end  of  the  policy  period.

Taft Aff. A, ECF Docket No. 49-1 at 56-57.

The term "your work" in the Northfield policy means "[w]ork or operations performed" by DNK or on its behalf and materials, parts, or equipment furnished in connection with such work, warranties or representations made about DNK's work, or the providing of or failure to provide warnings or instructions. See id. at 24.

The Northfield policy carries the following exclusion: "EXCLUSION - INJURY TO EMPLOYEES, WORKERS OR CONTRACTED PERSONS

4

OF INSUREDS OR CONTRACTED ORGANIZATIONS," endorsement S94-CG

(10/08), (the "Contracted Persons exclusion"). It states:

>This endorsement modifies insurance provided under the following:
>
>COMMERCIAL GENERAL LIABILITY COVERAGE PART
>***
>Bodily Injury to Employees, Workers Or Contracted Persons Of Insureds Or Contracted Organizations
>
>This insurance does not apply to "bodily injury" to:
>
>(1) Any person who is an "employee", "leased worker", "temporary worker", "volunteer worker" of you or any insured arising out of and in the course of:
>
>   (a) Employment by you or any insured; or
>
>   (b) Performing duties related to the conduct of your or any insured's business[.]
>***
>   For the purposes of this exclusion, contracted with includes contracting with an oral or written contract.
>
>   This exclusion applies:
>
>   (1) Whether the insured may be liable as an employer or in any other capacity; and
>
>   (2) Whether the insured may have any obligation to share damages with or pay damages because of the injury.

Taft Aff., ECF Docket No. 49-1, at 64.

On July 28, 2011, Mroz was allegedly injured on the project

in the course of his employment with DNK. <u>See</u> Shelton Aff. at

Ex. B ("Verified Compl."), ¶ 39.

In September 2011, Mroz commenced an action in Supreme Court, Kings County.  <u>Zbigniew Mroz v. OLR ECW Housing Development Fund Company, Inc., as Nominee for OLR ECW, L.P. pursuant to a Nominee Agreement, Omni New York, LLC</u>; <u>see</u> Verified Compl. at 1, 7.

On February 14, 2012, the OLR Entities commenced a third-party action against Renewal and KNS asserting claims against each for breach of contract, contractual indemnification, and failure to procure insurance.  <u>See</u> Shelton Aff. Ex. C, ¶¶ 14, 17-18, 21, 27-28, 41, 44-45.  On February 21, 2012, Mroz filed a supplemental summons and amended verified complaint in the underlying action adding direct claims against Renewal and KNS. <u>See</u> Shelton Aff. Ex. D ("Amended Verified Compl."), ¶¶ 62-75.

The Amended Verified Complaint alleges that OLR ECW Housing hired DNK to perform construction work at the project at 1663 East Burn Avenue.  <u>Id.</u> at ¶ 24.  On July 28, 2011, DNK was performing work at the project, and Mroz was a roofer working at the project.  <u>Id.</u> at ¶¶ 59-60.  According to the complaint, while Mroz was lawfully upon the premises in connection with his employment with DNK, he was caused to sustain serious, severe, and permanent personal injuries.  <u>Id.</u> at ¶ 61.  Mroz's injuries were allegedly caused by the defendants' negligence and violations of the New York Labor Law §§ 200, 240(1), 241(6). <u>Id.</u> at ¶ 64.

KNS sought defense and indemnification from Northfield, which Northfield declined.  See Taft Aff. Exs. D-J.  General also tendered to Northfield the defense and indemnification of OLR Entities in the Mroz action, a tender that Northfield declined.  See Taft Aff. Exs. K-L.

On September 11, 2014 General commenced this action against Starr, New York Marine, and Northfield seeking a declaration that the OLR Entities qualify as additional insureds under their respective policies, are entitled to defense and indemnification from each of the defendant insurers in connection with the underlying Mroz action, and that General is entitled to recover expenses it has incurred in their defense to date.  See Shelton Aff. Ex. F, Prayer for Relief ¶¶ 1-6.  Each insurer, including Northfield, denied the allegations and any coverage obligation to General and its insureds.

Starr filed a cross-claim seeking a declaration that New York Marine and Northfield owe a primary duty to defend and indemnify the OLR Entities in the underlying action and a declaration that New York Marine and Northfield must reimburse Starr for all expenses incurred by Starr in defending Renewal in the underlying action.  See Shelton Aff. Ex. H ¶¶ 125, 128, 143, 146.  Northfield filed its answer to Starr's cross-claims on December 5, 2014, denying, among other things, any coverage obligation to Starr's insured, Renewal.  See Shelton Aff. Ex. I.

7

New York Marine filed its answer to General's complaint on November 14, 2014. <u>See</u> Shelton Aff. Ex. J. New York Marine's answer included a cross-claim seeking a declaration that any amounts owed by New York Marine to General and its insureds are in excess to the obligations of Starr and Northfield to General and its insureds.  Northfield filed its answer to New York Marine's cross-claim on December 5, 2014.  <u>See</u> Shelton Aff. Ex. K.

The parties represent to the Court that New York Marine recently agreed to assume the defense and indemnification of the OLR Entities and Renewal and to accept an assignment of General's and Starr's claims against Northfield.  New York Marine demands that Northfield participate with it in the provision of defense and indemnification to the OLR Entities and Renewal, but Northfield denies any coverage for the claim.

Northfield moved for summary judgment dismissing General's claims against Northfield, dismissing the cross-claims by Starr and New York Marine against Northfield, and declaring that Northfield has no duty to defend or indemnify the OLR Entities, Renewal or KNS in the <u>Mroz</u> action.

New York Marine cross-moved for summary judgment seeking a declaration that Northfield has a duty to defend the OLR Entities, Renewal, and KNS in the underlying <u>Mroz</u> action.

## II.

The standard for granting summary judgment is well established.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."  Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).  The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Admiral Indem. Co. v. Travelers Cas. & Sur. Co. of Am., 881 F. Supp. 2d 570, 574 (S.D.N.Y. 2012).

9

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655; see also Gallo, 22 F.3d at 1223.  Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its burden, the burden shifts to the non-moving party to bring forward "specific facts showing a genuine issue for trial." Ovesen v. Mitsubishi Heavy Indus. of Am., Inc., No. 04cv2849, 2012 WL 677953, at *1 (S.D.N.Y. Mar. 1, 2012) (citation omitted).  The non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); Ovesen, 2012 WL 677953, at *1.  If there are cross-motions for summary judgment, the Court must assess each of the motions and determine whether either party is entitled to judgment as a matter of law.  See Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993) (citation omitted).

10

Under New York law, which both parties agree applies in
this diversity case, the interpretation of an insurance policy
is a question of law appropriately decided on a motion for
summary judgment when the policy is unambiguous.  See Vam Check
Cashing Corp. v. Fed. Ins. Co., 787 F. Supp. 2d 264, 267–68
(E.D.N.Y. 2011) (citation omitted).  In determining a dispute
over insurance coverage, the Court looks to the language of the
policy.  See Raymond Corp. v. Nat'l Union Fire Ins. Co., 833
N.E.2d 232, 234 (N.Y. 2005).  The Court construes the policy "in
a way that affords a fair meaning to all of the language
employed by the parties in the contract and leaves no provision
without force and effect."  See id.  "If the plain language of
the policy is determinative, [the Court] cannot rewrite the
agreement by disregarding that language."  See Fieldston
Property Owners Ass'n v. Hermitage Ins. Co., 945 N.E.2d 1013,
1017 (N.Y. 2011) (citing Raymond Corp., 833 N.E.2d at 234); see
also Admiral Indem. Co., 881 F. Supp. 2d at 574–75.

Here, both parties seek a declaratory judgment.  "The
decision to grant declaratory relief rests in the sound
discretion of the district court."  Lijoi v. Continental Cas.
Co., 414 F. Supp. 2d 228, 247 (E.D.N.Y. 2006).  That discretion
is informed by two primary considerations: (1) whether the
judgment will serve a useful purpose in clarifying or settling
the legal issues involved; and (2) whether it would finalize the

controversy and offer relief from uncertainty. <u>See</u> <u>Broadview</u>
<u>Chem. Corp. v. Loctite Corp.</u>, 417 F.2d 998, 1001 (2d Cir. 1969);
<u>see also</u> <u>Gen. Star Indem. Co. v. Driven Sports, Inc.</u>, 80 F.
Supp. 3d 442, 449 (E.D.N.Y. 2015), *appeal withdrawn*, (June 19,
2015).

### III.

Northfield argues that the Contracted Persons exclusion in
the policy issued by Northfield to DNK bars coverage for any
claim, whether for indemnification or defense, by any party for
alleged injuries to DNK employees, such as Mroz.

New York Marine concedes that the policy excludes coverage
for "bodily injury" to an employee arising out of the scope of
his employment for DNK, but New York Marine argues---both in
opposition to Northfield's motion for summary judgment and in
its own cross-motion for summary judgment---that the Court
should look outside the four-corners of the <u>Mroz</u> complaint to
determine if there is coverage for the occurrence.  New York
Marine contends that there is significant documentary and
testimonial evidence that Mroz was not injured in the course of
his employment for DNK.  If Mroz was injured outside the course
of his employment, New York Marine argues, then the Contracted
Persons exclusion would not apply and Northfield would have a
legal duty to defend the OLR Entities and KNS until Northfield

can establish through juridical admission or determination that Mroz was injured in the course of his employment.

New York Marine alleges that if Northfield had merely spoken to DNK's principal, Dennis Doceti, it would have discovered a factual assertion that Mroz did not suffer an on-the-job injury.  In a deposition, Doceti said that Mroz was not working at the worksite on the day of the alleged injury, and he pointed to a form Doceti had filled-out at the time that said Mroz suffered an "off-the-job injury" and to a spreadsheet that indicated Mroz was earning a different rate on the date of the alleged injury than he would have earned had he been working at the worksite.  See Stern Decl. Ex. 6 (Doceti Dep.) at 32, 34, 35, 40, 45-47, 75.

Northfield responds that if Mroz was not injured while working for DNK at the project, then the OLR Entities, Renewal, and KNS do not qualify as insureds or additional insureds under the Northfield policy and have no entitlement to defense or indemnification, at all.

Under New York law, "[t]he right to contractual indemnification depends upon the specific language of the contract.  In the absence of a legal duty to indemnify, a contractual indemnification provision must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed."  Alfaro v. 65 W. 13th Acquisition, LLC, 904

N.Y.S.2d 205, 207 (App. Div. 2010) (citations omitted); see also Heimbach v. Metro. Transp. Auth., 553 N.E.2d 242, 246 (N.Y. 1990) (contractual language has to evince an "unmistakable intention" to indemnify before a court enforces such an obligation).

But "an insurer's duty to defend is 'exceedingly broad' and is separate from and more expansive than the duty to indemnify." Commercial Union Assur. Co., PLC v. Oak Park Marina, Inc., 198 F.3d 55, 59 (2d Cir. 1999) (quoting McCostis v. Home Ins. Co. of Ind., 31 F. 3d 110, 112 (2d Cir. 1994)). "'It is not, however, without limits.' An insurer cannot be obliged to defend if there is no legal or factual allegation in the underlying complaint for which the insurer might eventually have to indemnify the insured." Id. (quoting First Investors Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 165 (2d Cir. 1998)).

Under either scenario posited by New York Marine, there is no legal or factual allegation that would give rise to Northfield's duty to defend or indemnify the OLR Entities, Renewal, and KNS in the underlying Mroz action. If Mroz was injured while *not* working on the project, then the OLR Entities, Renewal, and KNS would not qualify as additional insureds under the Northfield policy and would not be entitled to any coverage or indemnification. On the other hand, if Mroz was injured while working for DNK at the project---as his complaint clearly

14

alleges, <u>see, e.g.</u>, Amended Verified Compl. ¶¶ 59-61---then coverage would be barred by the Contracted Persons exclusion.

First, consider a scenario where Mroz was injured not working on the project, perhaps while working somewhere else or while walking as a pedestrian through the project worksite. That is the factual situation that New York Marine contends was supported by the evidence, although it is contrary to Mroz's state court complaint.  In that circumstance, coverage would not be excluded under the Contracted Persons exclusion, but the OLR Entities, Renewal, and KNS would not qualify as additional insureds under the Northfield policy.  Pursuant to the Northfield policy, the OLR Entities, Renewal, and KNS qualify as additional insureds "*[i]f, and only to the extent*, that the injury or damage is *caused by acts or omissions* of [DNK or its subcontractor] *in the performance of 'your work'*", which is work or operations performed by DNK or on its behalf, "to which the written contract requiring insurance applies."  Taft Aff. A, ECF Docket No. 49-1 at 56 (emphasis added).

If Mroz was in fact injured outside the scope of his employment with DNK, then the OLR Entities, Renewal, and KNS would "*not* qualify as . . . additional insured[s] with respect to the independent acts or omissions of such person or organization."  <u>Id.</u> (emphasis added).  DNK's "work" did not encompass activities that Mroz may have engaged in on other

jobs; accordingly, any injuries he sustained on those jobs would not fall within the ambit of the contract's additional insureds clause.  Northfield's policy would then plainly not apply to the OLR Entities, Renewal, and KNS, and Northfield would owe them no duty to defend or indemnify.

To avoid the text of the Northfield policy, New York Marine relies heavily on Fitzpatrick v. American Honda Motor Co., 575 N.E.2d 90 (N.Y. 1991), which considered whether there is a duty to defend "where the pleadings do not allege a covered occurrence but the insurer has actual knowledge of facts demonstrating that the lawsuit does involve such an occurrence." Id.  Fitzpatrick held that, under such circumstances, there was a duty to defend.  According to the New York Court of Appeals, "the insurer cannot use a third party's pleadings as a shield to avoid its contractual duty to defend its insured." Id.  The rationale for looking only to whether the policy covered the events alleged within the "four corners" of the complaint was that the duty to defend was broader than the duty to indemnify and that if the complaint alleged a covered occurrence, then there was a duty to defend even though extrinsic evidence showed that the occurrence was outside the policy coverage.  See id. at 92.  Where the underlying complaint fails to allege a covered occurrence, but the insurer has actual knowledge that the action involves a covered event, "wooden application of the 'four

16

corners of the complaint' rule would," according to the court, "render the duty to defend narrower than the duty to indemnify---clearly an unacceptable result." Id. In order to avoid that "unacceptable" result, the Fitzpatrick court held that an insurer is required "to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage." Id. at 93 (citation omitted). The court held that an insurer "cannot ignore the facts made known to it by its insured" when assessing its duty to defend. Id. at 95; see also Cowan v. Codelia, P.C., No. 98cv5548 (JGK), 1999 WL 1029729, at *5-6 (S.D.N.Y. Nov. 10, 1999).

But Fitzpatrick does not support New York Marine's argument. Here, the extrinsic facts to which New York Marine points would not establish "a reasonable possibility of coverage." Fitzpatrick, 575 N.E.2d at 93. "[A]n insurer owes its insured no duty of defense 'if it can be concluded as a matter of law that there is no possible factual or legal basis on which the insurer will be obligated to indemnify the insured.'" Maryland Cas. Co. v. Cont'l Cas. Co., 332 F.3d 145, 160 (2d Cir. 2003) (quoting Frontier Ins. Co. v. State, 662 N.E.2d 251, 253 (N.Y. 1995)). That is true here, where, even if the facts are as New York Marine posits, Northfield would not be obligated to indemnify the other parties because the other parties would not qualify as additional insureds. See Gen. Star

17

Indem. Co., 80 F. Supp. 3d at 455 (holding there was no duty to defend where, even if extrinsic evidence were believed, it could not give rise to a cognizable claim against the underlying defendant); see also Cowan, 1999 WL 1029729, at *6 ("[A]n insurer has no duty to defend where it can be determined from the inherent nature of the facts alleged in the complaint that no basis for recovery within the coverage of the policy is stated in the complaint.").

Second, consider the scenario where Mroz was injured during the course of his employment for DNK, as Mroz alleges in the underlying action.  See Amended Verified Compl. ¶¶ 59-61.  The Contracted Persons exclusion in Northfield's policy provides that there is no coverage for bodily injury sustained by "[a]ny person who is an 'employee' . . . of you or any insured arising out of and in the course of . . . . [e]mployment by you or any insured . . . ."  See Taft Aff., ECF Docket No. 49-1, at 64.

"It is well settled that to disclaim coverage based upon an exclusion in an insurance policy, the exclusion must be specific and clear.  While 'policy exclusions are given a strict and narrow construction, with any ambiguity resolved against the insurer,' the plain meaning of a policy's language may not be disregarded to find an ambiguity where none exists." N.Y. Univ. v. Arma Scrap Metal Co., Inc., 2013 N.Y. Misc. LEXIS 236, at

18

*12-13 (Sup. Ct. Jan. 23, 2013) (quoting Belt Painting Corp. v. TIG Ins. Co., 795 N.E.2d 15, 17 (N.Y. 2003)).

Here, no ambiguity exists in the policy's language.  As the New York State Supreme Court concluded: "[T]he plain meaning of the Contracted Persons exclusion invoked by Northfield is that the policy does not provide coverage for bodily injury to any person employed by any entity that is contracted with any insured for services."  Id. at *15 (holding slightly different version of Northfield's Contracted Persons exclusion barred coverage).

As New York Marine concedes, pursuant to the Northfield policy, coverage is excluded for bodily injury to an employee arising out of the scope of his employment for DNK.  Mroz would qualify as such an employee if he sustained his injuries while working as a roofer for DNK at the project.  And the exclusion specifically contemplates---and bars coverage for---claims by any putative insured involving injury to an employee of the named insured.  Accordingly, the express, unambiguous language of the Contracted Persons exclusion bars coverage for claims of defense and indemnity asserted against Northfield by the OLR Entities, Renewal, and KNS for the claims against them in the Mroz action.  Northfield is entitled to summary judgment dismissing the complaint and the cross-claims.  See, e.g., Sigma Contracting Corp. v. Everest Nat. Ins. Co., 907 N.Y.S.2d 104,

2010 WL 753362, at *10 (Sup. Ct. 2010) (holding that the plain meaning of similar exclusion language in insurance policy was unambiguous and excluded coverage when the insured or additional insured was sued for damages arising out of bodily injury to an employee).

Furthermore, because a declaratory judgment will serve a useful purpose by settling the legal issues involved in this case and would finalize the controversy and resolve any lingering uncertainty, Northfield's motion for a declaratory judgment that it has no duty to defend or indemnify the OLR Entities, Renewal, or KNS in the <u>Mroz</u> action is granted.  <u>See</u> <u>Gen. Star Indem. Co.</u>, 80 F. Supp. 3d at 455, 465.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit.  For the foregoing reasons, Northfield's motion for summary judgment is **granted**, and New York Marine's motion for summary judgment is **denied**.

The Clerk is directed to close all open motions, to enter judgment in favor of Northfield in accordance with this opinion, and to close this case.

**SO ORDERED.**

Dated:     New York, New York
           July 22, 2016                _____/s/_____
                                             John G. Koeltl
                                        United States District Judge

20